## UNITED STATES *v.* ROBBINS ET AL.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 493.   Argued December 7, 8, 1925.—Decided January 4, 1926.

1. A judgment of the District Court in an action against the United States under the Tucker Act, Jud. Code, § 24, Par. 20, was reviewable directly by this Court.   P. 326.
2. The whole income from community property in California was returnable by and taxable to the husband, under the Revenue Act of Feb. 24, 1919.   *Id.*

So *held* in view of the power of the husband over community property, its liability for his debts, etc., under the law of that State, without deciding whether the wife's interest is "a mere expectancy," or something more.

5 Fed. (2d) 690, reversed.

ERROR to a judgment of the District Court in favor of the executors of Robbins, in an action against the United States to recover money paid by the decedent as income tax.

*Solicitor General Mitchell,* with whom *Messrs. Robert P. Reeder* and *Frederick W. Dewart,* Special Assistants to the Attorney General, and *A. W. Gregg,* Solicitor of Internal Revenue, were on the brief, for the United States.

The proper method of approaching the question is to ascertain the nature of the wife's interest in community income in California, by finding what rights of ownership she may exercise over it under California law. The decisions of the California courts as to the extent of the wife's interest in the community income and her want of power to exercise proprietary rights over it are binding on the federal courts. A general review of the decisions of the California courts discloses that under the so-called community system applicable to the community property here involved, the wife during the existence of the community had no estate, title, or ownership in the community income, and the husband had absolute ownership and power of disposition of the income, restricted only by a prohibition against gifts. *Panaud* v. *Jones,* 1 Cal. 488; *Chance* v. *Kobsted,* 226 Pac. 632; *Van Maren* v. *Johnson,* 15 Cal. 308; *Packard* v. *Arellanes,* 17 Cal. 525; *Directors of Fallbrook Irrigation Dist.* v. *Abila,* 106 Cal. 355; *Spreckels* v. *Spreckels,* 116 Cal. 339, 172 Cal. 775; *Roberts* v. *Wehmeyer,* 191 Cal. 601; *Beard* v. *Knox,* 5 Cal. 252; *Payne* v. *Payne,* 18 Cal. 291; *Morrison* v. *Bowman,* 29 Cal. 337; *Taylor* v. *Taylor,* 192 Cal. 71; *Blum* v. *Wardell,* 270 Fed. 309; *Rice* v. *McCarthy,* 239 Pac. 56; *McMullin* v. *Lyon Fireproof Storage Co.,* 239 Pac. 422.

Disregarding descriptive phrases and terminology, the California statutes and decisions applicable to the property here involved have never yielded to the wife any semblance of a proprietary interest or ownership in the community property prior to dissolution of the community. The husband has complete and absolute dominion, possession, and control of the community prop-

erty. Sec. 172, Civil Code of California; Vol. 5, " California Jurisprudence," p. 335, § 27, and cases cited. The entire community property is subject to the husband's debts contracted before and after marriage. *Meyer* v. *Kinzer,* 12 Cal. 247; *Van Maren* v. *Johnson, supra; Schuyler* v. *Broughton,* 70 Cal. 282; *Spreckels* v. *Spreckels,* 116 Cal. 339; *Davis* v. *Green,* 122 Cal. 364. The husband may expend all of the community property and income as he pleases, wastefully and for his own pleasure, without infringing the wife's rights. *Spreckels* v. *Spreckels,* 116 Cal. 339; *Garrozi* v. *Dastas,* 204 U. S. 64. The only restrictions on the exercise of absolute ownership by the husband are a prohibition against gifts without the wife's consent (which has been held to vest no interest in her) and a prohibition (enacted in 1917 and not applicable to the property involved here) requiring the wife to join in a conveyance of community real estate. *Roberts* v. *Wehmeyer, supra; Spreckels* v. *Spreckels,* 172 Cal. 775. During the community the wife has no right to expend or have expended for her benefit any part of the community property. The obligation of the husband to provide support and necessaries is a personal one arising out of the marital relation, having no relation to the community property, and is a charge upon him and his separate as well as the community estate, and not based on the theory that the wife owns an interest in the community. *Sheppard* v. *Sheppard,* 15 Cal. App. 614; *Whittle* v. *Whittle,* 5 Cal. App. 696; *St. Vincent's Inst.* v. *Davis,* 129 Cal. 17; *Nissen* v. *Bendixsen,* 69 Cal. 521; *Shebley* v. *Peters,* 53 Cal. App. 288; *Brezzo* v. *Brangero,* 51 Cal. App. 79; *Davis* 1. *Davis,* 65 Cal. App. 499. During the community the wife may not maintain any action respecting the community property, and she is not a necessary or even a proper party to a suit involving the community property. *Greiner* v. *Greiner,* 58 Cal. 115; *Spreckels* v. *Spreckels,* 116 Cal. 339; *Mott* v. *Smith,* 16 Cal. 533; *Barrett* v. *Tewksbury,* 18 Cal. 334; *Chance* v. *Kobsted, supra.*

On dissolution of the community by her death her inchoate interest disappears. Absolute ownership remains in the husband. She leaves no estate in the community subject to administration, nor is it liable for her debts or expenses of administration, nor does the husband take by succession or descent. California Civil Code, § 1401; *In re Rowland,* 74 Cal. 523; *In re Burdick,* 112 Cal. 387. If she survives her husband, the wife succeeds to one-half of whatever may then remain of the community property, subject to payment of his debts, and expenses of administration. The entire community property forms part of his estate and is administered as such. The wife takes as heir, and her succession is subject to imposition of inheritance taxes. The Act of 1917, relieving the interest of the surviving wife from inheritance tax is merely an exemption and does not alter the nature or extent of the wife's interest. *In re Moffitt's Estate,* 153 Cal. 359; Civil Code § 1402; *In re Burdick,* 112 Cal. 387; *Sharp* v. *Loupe,* 120 Cal. 89; *Cunha* v. *Hughes,* 122 Cal. 111; *Moffitt* v. *Kelly,* 218 U. S. 400.

The statutory restriction on gifts by the husband has been held to vest no interest or ownership in the wife, and no case has yet held that she may, before dissolution of the community, sue to set aside a gift made without her consent. *Spreckels* v. *Spreckels,* 172 Cal. 775; *Dargie* v. *Patterson,* 176 Cal. 714; *Winchester* v. *Winchester,* 175 Cal. 391; *Greiner* v. *Greiner,* 58 Cal. 115; *Cummings* v. *Cummings,* 2 Cal. Unrep. 774.

On dissolution of the community by divorce, the community property is distributed by the divorce court, and in the absence of adultery or cruel treatment is divided equally. If such misconduct has occurred, the court distributes the community property according to what appears to be just and proper. *Gould* v. *Gould,* 63 Cal. App. 172; *Taylor* v. *Taylor,* 192 Cal. 71.

The community property is not liable for debts of the wife contracted after marriage. It is liable for her debts contracted *dum sola,* not because of her ownership in the community property, but because her husband became liable for her debts on marriage, and only his separate estate is exempted by statute. The freedom of the community property from liability for the wife's debts would prevent the United States from satisfying a claim against the wife for income taxes out of the community property. The United States could not lawfully compel the wife to pay an income tax on any share of the community income because it is not hers, but is the income and property of her husband. *Van Maren* v. *Johnson,* 15 Cal. 308; Civil Code, § 167; *Schuyler* v. *Broughton,* 70 Cal. 282; *Svetinich* v. *Sheean,* 124 Cal. 216.

The case of *Blum* v. *Wardell,* 270 Fed. 309 and 276 Fed. 226, may be distinguished, because it dealt with the nature of the wife's interest in the community property after dissolution of the community and not with her interest in the income during the community. If not distinguished, it should be disapproved, because it misconceived the nature of the Act of 1917, exempting the wife's succession from state inheritance tax, and treated it as changing the wife's interest, although it merely exempted it. It also mistakenly applied the Act of 1917, requiring the wife to join in a conveyance of real estate, to property acquired prior to 1917.

The amendments to the California laws affecting the wife's interest in the community property adopted in 1917 and later are not pertinent here, because all the property here involved was acquired prior to 1917, and under California decisions these amendments do not affect property acquired before their passage. *Roberts* v. *Wehmeyer,* 191 Cal. 601; *Spreckels* v. *Spreckels,* 116 Cal. 339. The opinions of the Attorney General hold that the

community income in California is taxable to the husband alone. 32 Ops. A. G. 298, 435; 34 Ops. A. G. 376, 395. Congressional inaction on the questions here involved is without particular significance. In the Philippine Islands the community income is held to be the income of the husband for Federal income tax purposes. *Madrigal and Paterno* v. *Rafferty,* 38 Phil. 414. The decisions of this Court in *Warburton* v. *White,* 176 U. S. 484, *Garrozi* v. *Dastas,* 204 U. S. 64, and *Arnett* v. *Reade,* 220 U. S. 311, do not deal with the California system and the California court has held that *Arnett* v. *Reade* does not describe the community system prevailing there. Opinions of text writers, including law writers from California law schools, completely refute the claim that in California the wife has any ownership in the community property and the claim that the system in California is like that in all the other States where a system of " community " property prevails. McKay, Community Property; Pomeroy, in West Coast Rep. Vol. 4, p. 390; " California Jurisprudence," Vol. 5, p. 330, (McMurray) ; 35 Harvard L. Rev. p. 48, (Evans.)

A comparison of the nature and extent of the wife's interest in the community property in California with the nature and extent of the wife's interest in the separate property and income of the husband in States where the community system does not prevail, shows that in California she is no more the owner of half the community income than is the wife an owner in a share of the separate property and income of the husband in States having a statutory substitute for common law dower. McKay, Community Property; *Griswold* v. *McGee,* 102 Minn. 114; *Stitt* v. *Smith,* 102 Minn. 253; *In re Rausch,* 35 Minn. 291; *Scott* v. *Wells,* 55 Minn. 274; *Hayden* v. *Lamberton,* 100 Minn. 384.

So far as concerns the question of discrimination and the uniformity of federal taxes throughout the United

States, it may be said that to permit the wife in California to reduce the surtaxes on what is really her husband's income by returning half of the community income as her own would be the most direct discrimination against husbands and wives in some forty States of the Union, where, in order to split their incomes between husband and wife to avoid high surtaxes, husbands must convey part of their property outright to their wives, paying a gift tax in the process.

*Messrs. Lloyd M. Robbins* and *Peter F. Dunne,* with whom *Mr. Carey Van Fleet* was on the brief, for defendants in error.

The community property law of California, as of the other community property States, was derived from the Spanish-Mexican Law of the community system, under which husband and wife were co-proprietors and equal owners of the community estate. *Meyer* v. *Kinzer,* 12 Cal. 248; *Packard* v. *Arellanes,* 17 Cal. 525; *Estate of Moffitt,* 153 Cal. 359; *Spreckels* v. *Spreckels,* 116 Cal. 339; Walton, Civil Law in Spain; Schmidt's Civil Law in Spain and Mexico; The Fuero Juzgo; Fuero Real; Siete Partidas; Moreau & Carleton, Partidas, Vol. 1, pp. 507–8, 532; Laws of Toro; Nueva Recopilacion; Novisima Recopilacion; Recopilacion de las Indias; *Warburton* v. *White,* 176 U. S. 484; *Arnett* v. *Reade,* 220 U. S. 311; *La Tourette* v. *La Tourette,* 15 Ariz. 200; Op. A. G. Feb. 26, 1921, T. D. 3138; *Beals* v. *Ares,* 185 Pac. 780; *Wright* v. *Hays,* 10 Tex. 130; Novisima Sala Mexicana; *Reade* v. *DeLea,* 14 N. M. 442, Escriche, Elements of Spanish Law, Coopwood trans.; Escriche, Diccionario Razonado de Legislacion y Juris Prudencia; Febrero, Libreria de Escribanos; *Fuller* v. *Ferguson,* 26 Cal. 569; de la Serua and Montalbau, Elements of the Civil and Penal Law of Spain; Manresa, on the Spanish Civil Code; Solicitor's Opinion, Internal Revenue Bulletin, Cum. Bulletin III–2, p. 177; *Murphy* v. *Crouse,* 135 Cal. 14;

80048°—26——21

*Bates* v. *Howard,* 105 Cal. 173; *Water Co.* v. *Anderson,* 170 Cal. 683; *Phelps* v. *Brady,* 168 Cal. 73; *Clokke Inv. Co.* v. *Lissner,* 186 Cal. 731; Cal. Civ. Code, § 1384; *Landreau* v. *Louque,* 43 La. Ann. 234; Decision of January 28, 1898, Supreme Court of Spain, Vol. 83, p. 218, of the Jurisprudencia Civil; Felipe Sanchez Roman, Studies of Civil Law and the Civil Code.

The vested interest during coverture of the wife in the community estate is fundamental as well to the French community system, as to the Spanish-Mexican law of community, from which the law of California, like the law of other community property States, has been derived. Howe, Studies in the Civil Law; *Saul* v. *Creditors,* 6 Mart. 569; *Cole's Widow* v. *Executors,* 7 Ibid. 41; *Dixon* v. *Dixon's Executors,* 4 La. 188; Moreau & Carlton, Partidas, Preface pp. 18–20; *Garrozi* v. *Dastas,* 204 U. S. 64; *Arnett* v. *Reade, supra; Guice* v. *Lawrence,* 2 La. Ann. 226; *Reade* v. *DeLea,* 95 Pac. 131; Troplong, Contrat de Mariage, vol. 2, p. 136; *Celestine de Nicols* v. *Curlier,* 1900, Appeal Cases 21.

The constitution and statutes of California reflect the Spanish-American law in full recognition of the wife's vested estate in half the acquisitions made during the marriage. *Botiller* v. *Dominguez,* 130 U. S. 238; *Hart* v. *Burnett,* 15 Cal. 530; *Estate of Moffitt,* 153 Cal. 359; Constitution of 1849, Art. XI, § 14; Act of April 17, 1850, Cal. Stats. 1850, p. 254; Act of 1891, Cal. Stats. p. 425, Civil Code § 172; Civil Code, § 172a; *Dow* v. *Gould & Curry Silver Mining Co.,* 31 Cal. 630; Civil Code of 1872; Stats. 1901, p. 198; Stats. 1917, p. 829; Stats. 1921, p. 91, Civil Code, § 172b; *Galland* v. *Galland,* 38 Cal. 265; Stats. 1905, p. 205; Civil Code, §§ 92, 105, 107; Stats. 1907, p. 82, Civil Code § 137; *Robinson* v. *Robinson,* 79 Cal. 511; Stat. 1917, p. 35; Stats. 1923, p. 30, amending Civ. Code § 1401; *Blum* v. *Wardell,* 270 Fed. 309; *Meyer* v. *Kinzer,* 12 Cal. 248.

The policy of the legislation of California has been consistent from the beginning, to establish the wife's vested interest on a parity with the like interest of the husband, and to hedge it round with one safeguard after another. The decisions of the courts have not been without conflict. The vested interest of the wife, in far the great number of decisions, from *Beard* v. *Knox*, 5 Cal. 252, (1855,) to the last expression of the Supreme Court of the State, in *Estate of Jolly*, 238 Pac. 353, has been sustained upon the firm ground that she was a co-partner and equal owner with her husband in the community estate, and that, upon his death, she took her half of the dissolved community, not as the heir of a husband who was exclusive owner, but in her own right, as survivor of the matrimonial partnership. There are conflicting cases,—in point of number a minority; and in point of authority, largely *dicta;* with perhaps a single exception, all *dicta*. These are the *dicta* which apply to the wife's interest the attenuating similitude of an " expectancy "—the expectancy of an heir apparent in the property of his ancestor. The remark fell primarily from Mr. Justice Field, *obiter,* in *Van Maren* v. *Johnson*, 15 Cal. 308, written in 1860. In his decisions, before and after, Mr. Justice Field upheld the vested and equal interest of the wife.

[The following California decisions were reviewed by counsel: *Beard* v. *Knox*, 5 Cal. 252; *Estate of Buchanan*, 8 Cal. 507; *Smith* v. *Smith*, 12 Cal. 217; *Meyer* v. *Kinzer*, 12 Cal. 248; *Scott* v. *Ward*, 13 Cal. 459; *Packard* v. *Arellanes*, 17 Cal. 525; *Johnston* v. *S. F. Sav. Union*, 63 Cal. 554, 75 Cal. 134; *Estate of Donahue*, 36 Cal. 330; *Ord* v. *DeLaGuerra*, 18 Cal. 67; *Payne* v. *Payne*, 18 Cal. 292; *Hart* v. *Robertson*, 21 Cal. 346; *Fuller* v. *Ferguson*, 26 Cal. 547; *Morrison* v. *Bowman*, 29 Cal. 337; *Dow* v. *Gould & Curry Mining Co.*, 31 Cal. 630; *Peck* v. *Brummagim*, 31 Cal. 442; *Galland* v. *Galland*, 38 Cal. 265; *De-*

*Godey* v. *DeGodey,* 39 Cal. 158; *Broad* v. *Broad,* 40 Cal. 493; *Broad* v. *Murray,* 44 Cal. 228; *Johnston* v. *Bush,* 49 Cal. 198; *Cook* v. *Norman,* 50 Cal. 634; *Plass* v. *Plass,* 121 Cal. 131; *Johnston* v. *S. F. Savings Union,* 75 Cal. 141; *Greiner* v. *Greiner,* 58 Cal. 116; *Estate of Rowland,* 74 Cal. 524; *Estate of Burdick,* 112 Cal. 387; *Spreckels* v. *Spreckels,* 116 Cal. 339; *Sharp* v. *Loupe,* 120 Cal. 89; *Cunha* v. *Hughes,* 122 Cal. 111; *Estate of Moffitt,* 153 Cal. 359; note to *English* v. *Crenshaw,* 127 Am. St. 1025, 1063.]

California decisions, both before and after the " erroneous triad " of *Burdick, Spreckels,* and *Moffitt* cases, hold that the wife, so far from succeeding to her share of the community as an heir of the husband, takes it " in her own right," as the surviving member of the matrimonial partnership: *Beard* v. *Knox,* 5 Cal. 252; *Johnston* v. *Bush,* 49 Cal. 198; *Payne* v. *Payne,* 18 Cal. 292; *Estate of Silvey,* 42 Cal. 210; *King* v. *LaGrange,* 50 Cal. 328; *Estate of Frey,* 52 Cal. 658; *Estate of Gwin,* 77 Cal. 313; *In re Gilmore,* 81 Cal. 240; *Directors* v. *Abila,* 106 Cal. 362; *In re Smith,* 108 Cal. 115; *Estate of Wickersham,* 138 Cal. 355; *Estate of Vogt,* 154 Cal. 508; *Estate of Prager,* 166 Cal. 450; *Estate of Rossi,* 169 Cal. 148.

[Later cases reviewed were: *Spreckels* v. *Spreckels,* 172 Cal. 775; *Dargie* v. *Patterson,* 176 Cal. 714; *Estate of Brix,* 181 Cal. 668; *Schneider* v. *Schneider,* 183 Cal. 335; *Roberts* v. *Wehmeyer,* 191 Cal. 601; *Taylor* v. *Taylor,* 192 Cal. 71; *Estate of Jolly,* 238 Pac. 353.]

We are dealing here with a federal statute. It concerns, not California alone, but all the community property States, and calls for uniform application. *Calhoun Gold Mining Co.* v. *Ajax Gold Mining Co.,* 182 U. S. 499. In construing and applying a federal statute, laying a tax, this court will look to the fact of the matter; not to the mere name which a state court, at one time or another, may have given to the thing. *New Jersey* v. *Anderson,* 203 U. S. 483; *Choctaw & Gulf R. R.* v. *Harrison,* 235 U. S. 292; *Burgess* v. *Seligman,* 107 U. S. 20. If any-

thing may be deemed settled by the Supreme Court of California, in the law of community property, it is to be found in its latest decision as in its first, separated by an interval of seventy years,—that the community system rests dominatingly and basically on a matrimonial partnership, to the assets of which the wife conclusively contributes on an equality with her husband, and in which, from the moment of the marriage, she has a "present, defined, certain interest," as co-owner and co-partner. The voluntary partnership, so familiar in everyday life, pays income tax on the just principle that taxation is correlated with ownership. One partner pays the tax on the share of the income which belongs to him, not on the share which belongs to his co-partner. If it be said that the husband, the managing partner, pays the tax of his co-partner out of community funds, the discrimination is not redressed. The tax upon partnership income is not computed upon the aggregated revenue, with reference to the higher surtax bracket, and the larger exaction; it is computed, for each partner, upon his share. It would be so computed in the case of a brother and sister, succeeding to the undivided ownership of an income-bearing property; it is so computed by the Treasury, it has been so computed by the Treasury for a period of years, in respect to seven out of eight community-property States. (Solicitor's Opinion, 121; T. B. 31–21–1845). Congress, in two general revisions of the Revenue Law, refused to alter the method of computation; once, at large, as to the community-property States, as well one as the other; again, in the specific case of California. But the discrimination against California still persists, though the highest law officer of the Government has advised to the contrary.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit to recover $6,788.03 income tax for the year 1918, paid by R. D. Robbins, late of California. Mr.

Robbins was married and the income taxed came from community property in California, acquired before 1917, when some changes were made in the law, and from the earnings of Mr. Robbins. He was required by the Treasury Department to return and pay the tax upon the whole income, against the effort of Mr. and Mrs. Robbins to file returns each of one-half. The result was that he had to pay the amount sued for, above what would have had to be paid if his contention had been allowed. The District Court found the facts as agreed by the parties and upon them ruled that the plaintiffs, the executors of Robbins, were entitled to recover as matter of law. 5 Fed. (2d) 690. A writ of error was taken by the United States, before the Act of February 13, 1925, c. 229, 43 Stat. 936, went into effect. *Greenport Basin & Construction Company* v. *United States,* 260 U. S. 512, 514.

Elaborate argument was devoted to the question whether the interest of a wife in community property has the relatively substantial character in California that it has in some other States. That she has vested rights has been determined by this Court with reference to some jurisdictions, *Warburton* v. *White,* 176 U. S. 484; *Arnett* v. *Reade,* 220 U. S. 311; and the Treasury Department has carried those rights to the point of allowing a division in the return of community income in other States where the community system prevails. Regulations 65 relating to the Income Tax under the Revenue Act of 1924, Art. 31. Its adoption of a different rule for California was based, we presume, upon the notion that in that State a wife had a mere expectancy while the husband was alive.

If on the whole this notion seems to us to be adopted by the California courts it is our duty to follow it, so far as material, even if contrary expressions should be found here or there in the books; and it is no concern of ours whether the prevailing decision is a legitimate descendant from its parent the Spanish law or otherwise.—We can see no sufficient reason to doubt that the settled opinion of

the Supreme Court of California, at least with reference to the time before the later statutes, is that the wife had a mere expectancy while living with her husband. The latest decision that we have seen dealing directly with the matter explicitly takes that view, says that it is a rule of property that has been settled for more than sixty years, and shows that *Arnett* v. *Reade,* 220 U. S. 311, would not be followed in that State. *Roberts* v. *Wehmeyer,* 191 Cal. 601, 611, 614. In so doing it accords with the intimations of earlier cases, and does no more than embody the commonly prevailing understanding with regard to California law as shown by commentators and the action of the Treasury Department, as well as by the declarations of the Court. McKay, Community Property, Section xi, p. 44. 35 Harvard Law Review, 47, 48. Treasury Regulations 65 relating to the Income Tax under the Revenue Act of 1924, Art. 31. *Rice* v. *McCarthy,* (Cal. Ct. App.) 239 Pac. Rep. 56.

But the question before us is with regard to the power and intent of the Revenue Act of February 24, 1919, c. 18, Title II, Part II, §§ 210, 211; 40 Stat. 1057, 1062. Even if we are wrong as to the law of California and assume that the wife had an interest in the community income that Congress could tax if so minded, it does not follow that Congress could not tax the husband for the whole. Although restricted in the matter of gifts, &c., he alone has the disposition of the fund. He may spend it substantially as he chooses, and if he wastes it in debauchery the wife has no redress. See *Garrozi* v. *Dastas,* 204 U. S. 64. His liability for his wife's support comes from a different source and exists whether there is community property or not. That he may be taxed for such a fund seems to us to need no argument. The same and further considerations lead to the conclusion that it was intended to tax him for the whole. For not only should he who has all the power bear the burden, and not only is the

husband the most obvious target for the shaft, but the fund taxed, while liable to be taken for his debts, is not liable to be taken for the wife's, Civil Code, § 167, so that the remedy for her failure to pay might be hard to find. The reasons for holding him are at least as strong as those for holding trustees in the cases where they are liable under the law. § 219. See Regulations 65, Art. 341.

*Judgment reversed.*

MR. JUSTICE SUTHERLAND dissents.

MR. JUSTICE STONE took no part in the case.